ALBERT BRUTON, DOING BUSINESS AS A. BRUTON ROOFING & ERECTING COMPANY, APPELLANT, v. SELLERS & MARQUIS ROOFING CO., A CORPORATION, RESPONDENT.—168 S. W. (2d) 101.

Kansas City Court of Appeals. February 1, 1943.

452

*Newbill & Brannock* for appellant.

*Clif Langsdale* for defendant.

CAVE, J.—This is an appeal from a judgment of the Circuit Court of Jackson County in an action instituted by the plaintiff against defendant to recover a balance of $745 alleged to be due under a contract with defendant. The defendant filed a counterclaim in which it sought to recover $240 which it had advanced to plaintiff under the contract. Trial was had before the court without the aid of a jury, and resulted in a judgment for defendant on plaintiff's petition, and for defendant on its counterclaim for the sum of $240.

The defendant had a contract with the State of Missouri for the laying of an asbestos roof on a new Recreational Building being constructed by the State at the Training School for Boys at Boonville. It had laid the roof but the State would not accept it because it leaked. The defendant then employed plaintiff to relay the roof and the contract of employment was evidenced by exchanged letters. On June 24, 1937, the plaintiff proposed to defendant:

"I will furnish labor insurance, scaffolding, Black lap cement, Gray Slaters Cement, necessary drive screws and lead washers to make the roof water tight for a total sum of $975.00.

"Should any ridge roll be broken due to cement or caulking while taking off to be furnished by you. . . ."

On July 14, defendant replied to that letter as follows:

"Your letter of June 25th, quoting us on taking off and relaying corrugated asbestos roof of the Recreational Building at the Training School for Boys at Boonville, Missouri, for the sum of $985.00, received.

"It is our understanding that when this work is completed it will be a water-tight job and acceptable to the State.

"As to cleaning off of the caulking compound applied by us, beg to advise this matter was talked over with Mr. Kline, Supervising Architect for the State, together with Mr. Stinerock of the Keasbey Mattison Company when we were in Boonville, and there was no complaint on same. What they want is a water-tight roof.

"If these conditions meet with your understanding, we hereby award you the contract for this work, and as stated in your letter, you will start work immediately."

After the exchange of these letters, plaintiff did relay the roof, but it leaked and was not accepted by the State. Before it was discovered the roof leaked and would not be accepted by the State, defendant

paid plaintiff the aforementioned $240. In his petition, plaintiff alleged that after receipt of the letter of July 14th, he proceeded to do the work and had completed and performed all of the terms and conditions on his part and that said work had been fully completed and the defendant was indebted to him for the balance due. In its answer and counterclaim, defendant denied that the plaintiff had performed his part of the contract, and denied that he had made the roof water-tight, as provided in said contract, and alleged that plaintiff had breached his contract by failing to make the roof water-tight, and that the defendant had been required to have the work performed by others, and prayed the recovery of the money theretofore paid.

The court made certain findings of fact and gave certain declarations of law, and those which are being criticized on this appeal will be noted.

In his assignments of error, the plaintiff lists nine grounds, but in his points and authorities he very properly consolidates these into three propositions: (a) that the judgment at the close of all of the evidence should have been for the plaintiff on his petition and on defendant's counterclaim because the plaintiff, being a contractor who had a contract to relay the roof, and in connection therewith followed plans and specifications furnished by the defendant or its agent, and the contractor having followed the plans and specifications and the said plans and specifications having proved defective because of the steel construction of the roof, and there being no negligence on plaintiff's part or any warranty that the plans and specifications were sufficient or free from defects, and the work being done in a workmanlike manner, and in compliance with the plans and specifications, the plaintiff was entitled to recover for the balance due; (b) the court erred in excluding certain testimony proffered by the plaintiff; (c) the court erred in entering judgment against the surety for $240 on the bond which the plaintiff had given in his appeal from the justice of the peace court to the circuit court.

Defendant answers the above claimed errors by contending (a) that the contract between the parties unequivocally required plaintiff to lay a water-tight roof acceptable to the State and that the uncontradicted evidence showed that the roof laid by the plaintiff was not water-tight and was never accepted by the State; (b) that the court properly excluded the testimony complained of because such oral testimony sought to vary the terms of the written contract and was hearsay; (c) that the error of the court in entering judgment against the surety for $240, when the appeal bond was only $100, should be corrected by a *remittitur*.

The evidence disclosed that the plaintiff removed the asbestos roof which had been put on the building by the defendant and relaid the same; that the foundation of the roof was of steel construction and that the plaintiff had never had any experience in laying a roof on a steel constructed frame. Plaintiff contended, and so testified, that

in relaying the roof he followed the specifications and plans provided by the State. He completed the work about July 31, 1937, and reported that fact to the defendant, and on August 4th, the defendant notified plaintiff that it had received a report that the roof leaked in some 25 or 30 places. The plaintiff returned to Boonville and testified that he repaired the roof on August 13th and while he was there, it rained and there were no leaks; however, about August 30th, when a heavy rain fell, the roof again leaked badly and the plaintiff made another trip to Boonville to examine the roof and concluded from that examination, and so testified, that the leaks were caused by the expansion, due to the weather, of the rigid steel frame of the roof structure, and not faulty workmanship. The defendant, in a letter to the manufacturer of the roofing material, seemed to adopt plaintiff's theory of the cause of the trouble and asked the manufacturer to assist in rectifying the condition.

Over a period of several months after September 1, 1937, plaintiff made many trips back to the building in an effort to stop the leaks, and testified as follows: "Q. Mr. Bruton, you never did get that roof so it did not leak, did you? A. No, sir; I did not. Q. And it never was accepted by the State, your work? A. So far as I know, I don't know. Q. Well, you know it was turned down by the State. A. I know it was turned down by the State. Q. And you do know that Mr. Martin of Sellers & Marquis Roofing Company went out there and put on an entire new roof? A. Well, I heard some discussion about it, but I never seen the roof."

Defendant offered no evidence.

Briefly stated, plaintiff's contention is that the leaks in the roof were due to faulty plans, which were not prepared by him, and that he did the work in a workmanlike manner and therefore is entitled to recover under that line of cases which hold that a construction contractor who has followed plans and specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications (Sandy-Hites Company v. State Highway Commission, 347 Mo. 954, 149 S. W. (2d) 828; Standard Stamping Company v. Hemminghaus, 157 Mo. 23); while the defendant contends that under the contract in this case, plaintiff agreed to lay a water-tight roof which would be acceptable to the State, and that since the evidence clearly disclosed that the roof was not water-tight and was not accepted by the State, then the plaintiff has not complied with his contract and is not entitled to recover. From statements made in the record by the trial court, and the giving and refusing of declarations of law and findings of fact, we conclude he so construed the contract and decided the case on that theory. It is perfectly clear from the record that the plaintiff, after he had seen and examined the plans and specifications of the building, proposed to

the defendant that he would relay the roof and *that it would be water-tight and acceptable to the State.* This language is plain and concise and amounts to an express warranty. Plaintiff's suit was based on that contract and he alleged he fully complied with its terms and provisions. The evidence does not support that allegation. Plaintiff relies upon the case of Sandy-Hites Company, *supra,* and similar cases, and quotes from l. c. 833, the following language of the Supreme Court: "The rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans and specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results—at least after the work is completed—solely from the defective or insufficient plans or specifications, *in the absence of any negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects.*" (Italics ours.) This language, and similar decisions, are of no support or comfort to the plaintiff in this case because of his contract and the undisputed evidence that the roof did leak and he was never able to repair it. Furthermore, the record discloses that the State, through its proper officials, refused to approve and accept the roof as relaid, by the plaintiff, and since that was a condition in his contract, he could not recover. The Supreme Court has spoken on this subject as follows: "When a contract provides for acceptance of work, after complying with certain specifications by engineers designated therein, before payment is due, a contractor cannot recover, on the contract, the whole amount to be paid for work required to be done by the contract without obtaining such approval, unless the provision requiring it be waived or he is prevented from obtaining it by fraud or some cause over which he has no control." [Myers et al. v. Union Electric Light & Power Co. (Mo.), 66 S. W. (2d) 565, l. c. 569.] There is no evidence, or claim made, that such provision was waived or that any fraud or misconduct on the part of any one prevented plaintiff from complying with his contract.

We rule this point against the plaintiff.

The next assignment of error relates to the exclusion of certain testimony offered by plaintiff. If the plaintiff had been permitted to testify he would have stated that prior to his letter of June 24th, he had talked with Mr. Stinerock of the Keasbey Mattison Company, which company was furnishing the material for this roof. That said conversation was out of the presence and hearing of the defendant or any of its agents; and that in that conversation, Mr. Stinerock told Mr. Bruton that in his opinion there was something wrong in the way the roof was laid (referring to the first roof), and that the roof was laid, or had to be laid, according to the plans and specifications of the contract for the construction of that building, and that the roof had to be relaid and the same material used, and advised plaintiff

he had suggested to the defendant that he (plaintiff) be given the contract, and that thereafter the plaintiff examined the plans and specifications that went into the contract and then went ahead and made his bid for doing the work. The trial court sustained the objection to such conversation because it was hearsay, not made in the presence or hearing of the defendant or anyone representing the defendant, and in this we think the court was correct. The plaintiff was later permitted to testify that he did examine the plans and specifications before he made his proposition of June 24th. We don't think the balance of the offered testimony would have any material bearing on the issue and its exclusion could not be prejudicial to plaintiff.

This case was filed and tried in the justice of the peace court, and the justice found against the plaintiff herein, who appealed to the circuit court and gave an appeal bond in the sum of $100. When the cause was tried in the circuit court, judgment was rendered for the defendant on its counterclaim and against plaintiff in the sum of $240 and against the surety on the appeal bond for the same amount. This is conceded to be improper, but it does not necessarily require a reversal and remanding of the case, but may be cured by a *remittitur*. Therefore, if the defendant will, within ten days after the filing of this opinion, enter a *remittitur* of $140 as to the Fidelity & Deposit Company, surety, then this judgment will be affirmed; otherwise, the cause is reversed and remanded.

All concur.